**The D.L. AULD COMPANY, Appellant,**

v.

**CHROMA GRAPHICS CORP., Appellee.**

**Appeal No. 83–585.**

United States Court of Appeals, Federal Circuit.

Aug. 15, 1983.

---

Richard A. Killworth, Dayton, Ohio, argued for appellant. With him on the brief was A. Michael Knapp, Columbus, Ohio.

Andrew S. Neely, Knoxville, Tenn., argued for appellee. With him on the brief was Edwin M. Luedeka, Knoxville, Tenn.

Before MARKEY, Chief Judge, DAVIS and BALDWIN, Circuit Judges.

MARKEY, Chief Judge.

## BACKGROUND

On October 15, 1981, the D.L. Auld Company (Auld) sued Chroma Graphics Corp. (Chroma) in the Eastern District of Tennessee for infringement of Patent No. 4,100,-010 (the Waugh patent) issued on a continuing application filed July 2, 1976 of an

original application filed June 12, 1974. The patent claims are drawn to a method of forming foil-backed inserts in the form of cast decorative emblems.[1]

The parties agreed on trial and entry of judgment before and by a magistrate and on direct appeal from that judgment.

Chroma took a discovery deposition of the inventor, Robert E. Waugh, who was also Vice President for Research and Development of Auld, the assignee of the patent. Submitting portions of that deposition and documents from Auld's files, Chroma moved for summary judgment on the ground that the invention had been "on sale" for more than one year before June 12, 1974. 35 U.S.C. § 102(b).

Auld opposed the motion and asked for oral hearing, submitting other portions of Waugh's discovery deposition, an affidavit amending answers to interrogatories, affidavits of Robert A. Wanner and David L. Auld, both with attachments, and pages from a Waugh deposition taken in another case.

Chroma replied, submitting further parts of the Waugh discovery deposition.

On October 22, 1982, the magistrate entered an order granting the motion, accompanied by a memorandum opinion.

Auld moved to vacate the order because no hearing had been held. The magistrate treated the motion as one to alter or amend under Fed.R.Civ.P. 59(e) and held a hearing.

The magistrate then entered an order denying Auld's motion, accompanied by a memorandum opinion.

## ISSUES

(1) Whether issues of material fact were present, rendering issuance of summary judgment improper.

(2) Whether absence of an oral hearing before issuance of the original order rendered that order invalid in this case.

## OPINION

(1) *Propriety of Summary Judgment*

A. *General*

 The primary principles governing summary judgment are so well settled as not to require citation of authority. A summary judgment may not issue when material issues of fact requiring trial to resolve are present. Evidence and inferences must be viewed and drawn in a light most favorable to the nonmoving party. The moving party bears the burden of showing absence of a material fact issue and doubt will be resolved against that party. Summary judgment is an important means of conserving judicial and other resources. It must, however, be carefully employed in appropriate cases for an improvident grant may deny a party a chance to prove a worthy case and an improvident denial may

1. Independent claim 1 reads:
 "A method of forming foil-backed inserts in the form of cast decorative emblems, comprising:
 a. providing a series of flat decorative foil shapes onto which a clear, hard plastic composition suitable as a substitute for vitreous enamel is to be cast,
 said foil shapes each having a top and bottom surface,
 said foil shapes also having sharply defined peripheral sides which intersect with said top surface, and
 having an adhesive coated on said bottom surface,
 b. holding said series of foil shapes flat and horizontal on a supported surface free from surrounding side walls,
 c. casting a measured amount of said plastic composition in liquid form, which liquid is poorly wetting with respect to the top surface of said foil shapes, directly onto the top surface of each of said foil shapes so that it flows to said sharply defined peripheral sides and forms a positive meniscus without flowing over said sharply defined peripheral sides,
 d. allowing said cast plastic composition to cure while maintaining said foil shapes flat and horizontal, whereby said cured plastic composition gives a lens effect to the top surface of said foil shapes onto which it has been cast, and
 e. utilizing said adhesive coated bottom surface of said foil shapes to adhere said inserts onto their intended base."
 Dependent claims 2–10 define specific foil shapes and plastic compositions.

force on a party and the court an unnecessary trial.

■ Concurring as they must in applicability of the foregoing principles,[2] the parties assert respectively the presence and absence in the record of an issue of fact material to a determination of whether the claimed invention was on sale before the critical date, June 12, 1973.

Though Auld asserts the contrary on appeal, the magistrate fully applied the principles listed above, saying in his memorandum opinion:

> The only issue before the Court was whether the defendant was entitled to Summary Judgment as a matter of law or whether disputed issues of material fact remained requiring that the case proceed to trial.

> \* \* \* \* \* \*

> Various indicia of intent to sell preclude any serious possiblity [sic] that these efforts were merely experimental. First of all, sales representatives, not the Research and Development people, carried these samples around in their briefcases and showed them to customers. Prices and delivery times were discussed. Mr. Waugh's deposition makes it abundantly clear that, over a period of about four years, the D.L. Auld Company attempted to obtain orders for emblems made according to the patented process. This is precisely the activity that Section 102(b) attempts to limit to one year.

> \* \* \* \* \* \*

Even the most indulgent reading of The D.L. Auld Company's business records and the deposition testimony of its Vice-President for Research and Development Robert E. Waugh precludes any other finding but that at least some sample products were made in the laboratory according to the Waugh patent and were offered for sale well outside of the statutorily protected year.

Waugh's invention is a method. The parties cite numerous cases involving "on sale" considerations in respect of product inventions under 35 U.S.C. § 102(b). The focus of inquiry here, however, is on the method. If Auld produced an emblem by the method of the invention and offered that emblem for sale before the critical date, the right to a patent on the method must be declared forfeited. *Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co.,* 153 F.2d 516, 68 USPQ 54 (2nd Cir.1946). The "forfeiture" theory expressed in *Metallizing* parallels the statutory scheme of 35 U.S.C. § 102(b), the intent of which is to preclude attempts by the inventor or his assignee to profit from commercial use of an invention for more than a year before an application for patent is filed. The record includes testimonial and documentary evidence establishing that the claimed method was employed in preparing a number of sample emblems and that Auld attempted to profit from use of that method by offering some of those samples for sale to a number of potential buyers well before the critical date. Those facts operate to create a forfeiture of any right to the grant of a valid patent on the method to Auld.

Where a method is kept secret, and remains secret after a sale of the product of the method, that sale will not, of course, bar another inventor from the grant of a patent on that method. The situation is different where, as here, that sale is made by the

---

**2.** They diverge respecting application of the presumption of validity, 35 U.S.C. 282. Auld mistakenly says it increases the difficulty of showing an absence of factual issues. Chroma mistakenly says the presumption "has little or no effect" when the challenger presents "on sale" evidence that was not before the Patent and Trademark Office. The presumption is a procedural device, not a substantive rule. It assigns the burden, as set forth in the third sentence of § 282: "The burden of establishing invalidity ... shall rest on the party asserting it." Submission of evidence by a patent challenger may raise a need for a patentee to go forward with countering evidence, but the burden-assigning effect of the presumption is never lost. The statute requires that the burden of persuasion remain with the patent's challenger throughout the case, *Solder Removal Co. v. ITC,* 582 F.2d 628, 632, 65 CCPA 120, 199 USPQ 129, 132 (1978), and normally must be carried by clear and convincing evidence, *Astra-Sjuco, A.B. v. ITC,* 629 F.2d 682, 67 CCPA 128, 207 USPQ 1 (1980).

applicant for patent or his assignee. Though the magistrate referred to § 102(b), he did so in recognizing that the "activity" of Auld here was that which the statute "attempts to limit to one year." In so doing, the magistrate correctly applied the concept explicated in *Metallizing,* i.e. that a party's placing of the product of a method invention on sale more than a year before that party's application filing date must act as a forfeiture of any right to the grant of a valid patent on the method to that party if circumvention of the policy animating § 102(b) is to be avoided in respect of patents on method inventions.

### B. Evidence of Sale

The involved emblems include a layer of clear plastic having a curved outer surface formed on a decoration-bearing base. Since 1965, Auld sold that type of emblem to the auto industry. The early emblems were made by the "Vitrolux" method, in which the base is a shallow cavity designed to receive a measured amount of liquid plastic, while the base was held horizontal. The quantity of plastic was greater than that required to fill the cavity, producing a curved upper surface. The plastic did not overflow the cavity walls because of its surface tension.

In about 1968, Waugh began work on a variation of the Vitrolux process. That work resulted in the Vitrofoil method, the subject of patent 4,100,010. The Vitrofoil method employs a flat sheet of metal as the base on which a metered amount of liquid plastic is deposited while the base is held horizontal. The plastic flows to the edge of the sheet without overflowing; its surface tension causing it to stop at the sheet's edge to form a curved upper surface.

Waugh testified in his deposition that as early as 1969, Auld was producing samples in accordance with the claimed method by hand, and that between 1969 and June 1973, Auld "showed these samples to people and said we [Auld] could do this, and we [Auld]

could not generate any interest for the product".[3] Attempts to market those emblems were conducted by an outside manufacturer's representative and Auld's sales staff. The emblem produced by the Vitrofoil method initially would not sell and Auld for a period "shelved" the emblem produced by the Vitrofoil method.

Sample emblems were submitted to prospective customers, such as Cadillac, General Motors, Buick, Ford, Chrysler, and the National Hockey League and the National Football League, through a company called International Crest. Waugh said that the established sales practice in the automotive industry was to present samples to prospective customers, that Auld would not "tool up" without a purchase order, and that the submission of sample emblems produced by the Vitrofoil method followed Auld's established sales procedure.

Waugh testified that sample emblems submitted to prospective customers before the critical date were made in the laboratory following each of the steps set forth in Claim 1 of the patent in suit. He further said that the claimed method was not followed on some samples and a "postforming" operation was required on those particular emblems because they curled.

Waugh testified that of the samples submitted before June 1973 by the Auld sales department to International Crest, to interest them in the product for the National Football and Hockey Leagues, some were not made by the claimed method, but that others were. Auld quoted pricing and delivery dates in writing, for an order of more than 150,000 emblems, to International Crest.

Thus the record evidence includes corporate documents and testimony establishing that some sample emblems were produced by hand, following the steps of the method, and that those hand-produced emblems were offered for sale before June 12, 1973. Against that evidence, Auld makes numerous arguments and assertions respecting

---

**3.** Waugh carefully reviewed and corrected his deposition, noting 116 corrections. Auld's assertion of material ambiguities and inconsistencies, in the deposition itself or in comparison with later filed affidavits, is unsupported in the record.

other samples and other parts of the record, insisting that there are conflicts in testimony improperly resolved on a motion for summary judgment. On careful review of each such argument and assertion and after viewing all evidence and inferences in a light most favorable to Auld, we are convinced that no material conflicts or credibility questions were or needed to be resolved by the magistrate and that no issue of material fact requiring a trial to resolve is present on this record.

### C. Auld's Arguments

Auld admits that emblems were made between 1969 and 1972 and that at least one was supplied, with prices quoted, to International Crest in "late 1972—early 1973." It says, however, that those emblems were made by a "laboratory" method; that a material issue exists on whether the offers fell within the "experimental" exception to the "on sale" bar of 35 U.S.C. § 102(b); that whether the offers were for experimental purposes is a matter of Auld's intent and thus ill-suited to resolution by summary judgment; that the magistrate improperly shifted the burden of proof by requiring Auld to show that the offer for sale was for experimental purposes; that no sale was made to International Crest; that some samples were not made by the claimed method; that it was error to grant summary judgment without receiving the proffered testimony of Auld salesmen; that the claimed method was for a manufacturing process involving a series of emblems, while in the "laboratory" method emblems were made one by one and that method was not demonstrated to be practical or readily reproducible; that affidavits of Waugh, Tanner, and David Auld, filed to correct and clarify "ambiguities and inconsistencies" in Waugh's deposition, raise a material issue on whether the claimed method had been reduced to practice before June, 1973; and that those affidavits show that emblems provided Chrysler were not made by the patented method because they were not made in a manufacturing process involving a series of emblems, were not held flat, and had to be postformed.

Labeling the method employed in making the sample for International Crest as a "laboratory" method raises no material fact issue. The method was that of Claim 1 and was successfully performed to produce an emblem offered for sale, or resale, by International Crest. That is all the law requires. *Corona Cord Tire Co. v. Dovan Chemical Corp.,* 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610 (1928); *Breen v. Miller,* 347 F.2d 623, 52 CCPA 1539, 146 USPQ 127 (1965). Waugh's testimony establishes unequivocally that the "laboratory" method involved each step of the claimed method, and that each such step was performed in producing some early samples for International Crest. When carefully read, the "clarifying" affidavits do not contradict those facts. Portions of those affidavits quoted by Auld relate to different samples, to portions of the patent specification (not the claims), to commercial production, and to other customers. Even then, the only asserted differences between the patented method and the "laboratory" method are the use of adhesive and holding the foil shapes flat. Waugh's testimony was unequivocal that those very steps were employed in making some samples by the "laboratory" method, and nothing in the affidavits contradicts that testimony.

Auld's attempt to establish a material issue of fact respecting the "experimental" exception to 35 U.S.C. § 102(b) is misdirected. First, each of Auld's citations to evidence in the record relates to later experimentation on mass production by machine for commercialization in quantity, not to any experimentation on the earlier performed method itself. *Land v. Regan,* 342 F.2d 92, 52 CCPA 1048, 144 USPQ 661 (1965). Second, Auld's reliance on the labeling of the sample emblems as "lab samples" submitted to customers for "evaluation" is irrelevant. The claim is for a method, not a product. That the method would produce the product was known. Submission of the emblems for sale if the customer liked them is not experimentation on the method. *See Kalvar Corp. v. Xidex Corp.,* 384 F.Supp. 1126, 182 USPQ 532 (N.D.Cal. 1973), *Aff'd.,* 556 F.2d 966, 195 USPQ 146

(9th Cir.1977). *In re Theis,* 610 F.2d 786, 204 USPQ 188 (Cust. & Pat.App.1978).

Similarly, Auld's reliance on intent of the patent holder must fail. Mr. David Auld said International Crest was told that the samples were experimental. As above indicated, however, the question is whether the method had been successfully performed in making the samples, not whether the samples were themselves "experimental." The record establishes that the claimed method was successfully performed, albeit by hand, that it produced an emblem, and that the emblem was offered for sale. The corporate documents of Auld make plain its intent to sell the emblems produced by the "laboratory" method, which is the same as the claimed method. That Auld might have to tool up for mass production if a customer gave a large order bears no relation to whether experimentation was required on the claimed method itself. Moreover, if a mere allegation of experimental intent were sufficient, there would rarely if ever be room for summary judgment based on a true "on sale" defense under 35 U.S.C. § 102(b).

■ Nor did the magistrate effectively shift the burden to Auld on the experimentation issue. Once evidence that an invention was on sale or, as here, that the product of a method invention was on sale, is presented, countervailing evidence establishing an experimental purpose must necessarily come from the patentee. To defeat a motion for summary judgment, a patentee need not prove an experimental purpose, but must submit facts indicating an ability to come forward with evidence that such proof is possible. *See De Long Corp. v. Raymond International, Inc.,* 622 F.2d 1135, 206 USPQ 97 (3rd Cir.1980). The court in *De Long* pointed out that "the duty

to come forward with possible contradiction of proof is the essence of Federal Rule of Procedure 56," citing *First National Bank in Billings v. First Bank Stock Corp.,* 306 F.2d 937 (9th Cir.1962).[4] Chroma having established a *prima facie* case, it fell to Auld to submit evidence, by affidavit or otherwise, setting forth specific facts raising a genuine issue for trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

■ Nothing in the submissions of Auld to the magistrate indicated any possibility that the performance by hand of the method in producing some of the International Crest samples was itself in any manner experimental. As above indicated, that Auld may have experimented, after the critical date, with means to achieve tooling for mass production bears no relation to whether the method of the claim had earlier been used and the product of that earlier use offered for sale.[5]

That no sale was actually made to International Crest is irrelevant. An offer to sell is sufficient under the policy animating the statute, which proscribes not a sale, but a placing "on sale." 35 U.S.C. § 102(b). *General Electric Co. v. U.S.,* 654 F.2d 55, 211 USPQ 867 (Ct.Cl.1981).

Similarly, submission of evidence that *some* samples offered for sale were not made by the claimed method cannot raise a material issue of fact, and thus preclude summary judgment, in the face of uncontradicted evidence that *other* samples had been made by the claimed method and offered for sale before the critical date.

The magistrate committed no error in refusing the testimony proffered by Auld.

4. In its initial brief, Auld cited part of the *De Long* opinion. Chroma cited a continuing part in which the requirement of coming forward was set forth. In its reply brief Auld points out that the patentee in *De Long* failed to oppose the motion for summary judgment. Though Auld submitted affidavits here, the result must be the same as in *De Long,* for those affidavits fail to present specific facts indicating that proof was possible of an experimental purpose

relating to the method performed in producing some of the International Crest samples.

5. Auld's brief quoted a segment of Waugh's testimony indicating that work had been exploratory and developmental. Chroma's brief supplied the full context, in which it is clear that Waugh was speaking of the work of developing *machinery* for mass production.

The proffer is couched in broad terms describing the subject matter and issues about which the unnamed witnesses would testify. It is devoid of specific facts sufficient to raise a material issue for trial.

In a further effort to distinguish what it calls its "laboratory" method from the claimed method, Auld says the Waugh patent is limited to "a *manufacturing* process, involving a *series* of foil shapes." [*Emphasis Auld's*]. Its difficulty here is twofold. First, the claim is for "[a] method of forming foil backed inserts," *supra* note 1. It is not for a method of manufacturing or mass producing inserts, and the word "series" does not make it such. Second, Waugh testified unequivocally that a series of foil shapes were produced by hand (the "laboratory" method), following each step of the claimed method. If the "laboratory" method did involve the making of emblems one-by-one, that fact would merely mean a greater time interval between individual emblems in a series. There is nothing of record to indicate that the "laboratory" method was itself impractical or not readily reproducible as a method.

The affidavits filed in an effort to "clarify" Waugh's deposition fail to contradict his crucial testimony that every step of the claimed method was followed in producing emblems offered to International Crest. The Wanner and David Auld affidavits assert that the claimed method was "not reduced to practice" until August, 1973. Not only is that assertion a legal conclusion, it relates to the manufacturing of an order for Chrysler, and does not contradict Waugh's testimony establishing reduction to practice of the claimed method to produce the samples offered earlier to International Crest. Waugh's affidavit, being similarly directed to other samples and to a method "as performed in May 1973," does not contradict his unequivocal testimony that every step of the claimed method was successfully performed earlier in producing emblems offered to International Crest.

The effort here to staunch the fatal wound inflicted upon Auld's suit by Waugh's deposition testimony is not new to the law. In *International Harvester Co. v. Deere & Co.,* 478 F.Supp. 411 (D.Ill.1979), *vacated on jurisdictional grounds,* 623 F.2d 1207 (7th Cir.1980), the court held that no genuine issue of material fact was created by affidavits contradicting admissions of the patent owner and inventors. In the present case, Auld's affidavits do not contradict the crucial testimony of the inventor and are thus even less capable of creating a genuine issue of material fact.

Though the parties devote a good deal of their briefs to a dispute over whether a material issue exists respecting the emblems offered to Chrysler and whether they were made by the claimed method, we need not decide that question. No material issue of fact exists with respect to the emblems offered earlier to and through International Crest and their production by the claimed method.

In sum, the magistrate did not err in determining: (1) that no genuine material issue of fact was present; (2) that the uncontradicted facts of record establish that the claimed method invention had been commercially exploited more than a year before the crucial date; (3) that no possibility of proving an experimental purpose was present; and (4) that Patent No. 4,100,010 was, therefore, invalid within the intent of 35 U.S.C. § 102(b).

### (2) *Necessity For Oral Hearing*

The magistrate apparently failed to note the last sentence in Auld's brief in opposition to the motion for summary judgment, in which sentence Auld requested an oral hearing, for the motion was granted without a hearing. That action, though doubtless inadvertent, was not in accord with the letter of Local Rule 12(c) of the District Court which provides for oral hearing on request on motions determinative of the case on the merits.

Auld, on receipt of the magistrate's decision, filed a motion to vacate the judgment and grant a hearing. The magistrate, saying he did so to preserve Auld's right to appeal, treated the motion as one filed under Rule 59(e), held a hearing, and denied

the motion to vacate his judgment, issuing with his order a Memorandum.

Auld's present argument is that (1) failure of the magistrate to follow Local Rule 12(c) requires reversal of the judgment and remand for trial of the case on the merits, and (2) the hearing granted on Auld's motion unfairly required Auld to bear a burden of trying to get the magistrate to change his mind; whereas, the burden of persuasion in a hearing on the motion for summary judgment would have rested on Chroma.

With respect to argument (1), no basis can be seen for reversal and remand for trial. Whether a hearing was or was not held before judgment in accord with the letter of Local 12(c) has no bearing on the merits of the grant of summary judgment on the record. That a pre-judgment hearing was not held on the motion cannot possibly justify a remand for an unnecessary trial. The cure for a failure to hold a hearing would normally be a remand with instructions to conduct that hearing. In the present case, however, it appears that Auld has already obtained a hearing, albeit in connection with its motion to vacate, and there is no way that a remand could provide the hearing before judgment on the motion for summary judgment envisaged by the letter of Local Rule 12(c).

Auld makes too much of argument (2), in our view. That argument is premised on the assumption that the magistrate, having issued judgment on the summary motion, would be reluctant to change that judgment no matter what was said to him by Auld's counsel at the hearing on Auld's motion. The magistrate's judgment on the summary motion, however, was based on the parties' briefs, the deposition testimony, and documentary exhibits of record. Auld's opportunity to point to specific errors in the magistrate's original opinion is not inconsequential. There is no basis in the record for assuming that the magistrate was incapable of or resistant to vacating his judgment after hearing both sides on Auld's motion, and that Auld was therefore prejudiced. On the contrary, the magistrate's full memorandum issued after the hearing on the motion makes clear that any such assumption would be unsupportable. In that memorandum, the magistrate recognized each of Auld's arguments and spelled out wherein the record impelled adherence to his judgment notwithstanding those arguments.

Strict compliance with local procedural rules is, of course, always desirable. When, as here, noncompliance is inadvertent and all steps open to the decisionmaker in rectification have been taken, there being no denial of a constitutional right to due process, it would not serve the ends of justice to assign controlling weight to the grant of a hearing after rather than before initial judgment. In all events, noncompliance with the letter of Local Rule 12(c) cannot in this case serve to cause a trial on the merits of the underlying lawsuit, the dismissal of which under Rule 56 of the Federal Rules of Civil Procedure was eminently proper.

CONCLUSION

The judgment of the District Court, acting through the magistrate, is affirmed in all respects.

AFFIRMED.