# United States Court of Appeals for the Federal Circuit

---

**CELANESE INTERNATIONAL CORPORATION, CELANESE (MALTA) COMPANY 2 LIMITED, CELANESE SALES U.S. LTD.,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**ANHUI JINHE INDUSTRIAL CO., LTD., JINHE USA LLC,**
*Intervenors*

---

2022-1827

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1264.

---

Decided: August 12, 2024

---

DEANNE MAYNARD, Morrison & Foerster LLP, Washington, DC, argued for appellants. Also represented by SETH W. LLOYD, BRIAN ROBERT MATSUI; AARON GABRIEL FOUNTAIN, Austin, TX.

BENJAMIN S. RICHARDS, Office of the General Counsel, United States International Trade Commission,

Washington, DC, argued for appellee. Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

NICOLE A. SAHARSKY, Mayer Brown, LLP, Washington, DC, argued for intervenors. Also represented by CLARK BAKEWELL, GARY HNATH, BRYAN NESE, MINH NGUYEN-DANG; SCOTT MCMURRY, New York, NY.

BRIAN PANDYA, Duane Morris LLP, Washington, DC, for amicus curiae National Association of Manufacturers.

─────────────────

Before REYNA, MAYER, and CUNNINGHAM, *Circuit Judges.*

REYNA, *Circuit Judge.*

Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd. appeal a decision of the United States International Trade Commission. The International Trade Commission found Celanese's asserted patent claims invalid under the on-sale bar, 35 U.S.C. § 102(a), because Celanese sold products made using the patented process more than one year before the effective filing dates of the asserted patents. We affirm.

BACKGROUND

Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd. (collectively, "Celanese") filed a petition before the United States International Trade Commission (the "Commission"), alleging that Anhui Jinhe Industrial Co., Ltd., Jinhe USA LLC (collectively, "Jinhe") and other entities violated 19 U.S.C. § 337. *See In the Matter of Certain High-Potency Sweeteners, Processes for Making Same, & Prod. Containing Same*, Inv. No. 337-TA-1264, Order No. 29, 2022 WL 142328, at *1 (Jan. 11, 2022) ("*ITC Decision*"); J.A. 53. Celanese alleged that Jinhe and other entities were importing Ace-K (an artificial sweetener) made using a process that infringed Celanese's patents. J.A. 63.

Relevant to this appeal, Celanese asserted claims 11 and 27 of U.S. Patent No. 10,023,546, claims 7, 28, and 33 of U.S. Patent No. 10,208,004, and claims 1, 19, and 34 of U.S. Patent No. 10,590,095.[1] *ITC Decision*, 2022 WL 142328, at *1, *4. The asserted patents each have an effective filing date of September 21, 2016, and are thus governed by the America Invents Act ("AIA"). *Id.* at *1.

It is undisputed that Celanese's patented process was in secret use in Europe before the critical date of September 21, 2015, i.e., one year before the effective filing date of the asserted patents. *Id.* at *3. It is also undisputed that Celanese had sold Ace-K made using the patented process in the United States before the critical date. *Id.*

Jinhe moved for a summary determination of no violation of 19 U.S.C. § 337 on the ground that the claims at issue were invalid under the on-sale bar provision, 35 U.S.C. § 102(a)(1). According to Jinhe, because Celanese sold Ace-K more than one year before it applied for the asserted patents, those sales triggered the on-sale bar. Celanese did not dispute that under pre-AIA precedent, sales of products made using a secret process triggered the on-sale bar, precluding the patentability of that process. *See ITC Decision*, 2022 WL 142328, at *3–4. Rather, Celanese argued that the AIA changed pre-AIA law such that its pre-2015 sales of Ace-K made using its secret process would not trigger the on-sale bar. *See id.* at *3.

The presiding Administrative Law Judge ("ALJ") rejected Celanese's argument, concluding that Celanese's prior sales triggered the on-sale bar and that the AIA did not overturn settled pre-AIA precedent. In arriving at that conclusion, the ALJ found the Supreme Court's decision in *Helsinn* instructive. *Id.* (citing *Helsinn Healthcare S.A. v.*

---

[1]    Celanese also asserted several other claims, the validity of which is not at issue in this appeal.

*Teva Pharms. USA, Inc.*, 586 U.S. 123 (2019)). Under well-settled pre-AIA precedent, the ALJ explained, a patentee's sale of products made using a secret process, as here, would trigger the on-sale bar to patentability. *Id.* at *3 (collecting relevant pre-AIA precedent). In *Helsinn*, the ALJ continued, the Supreme Court addressed whether Congress altered the on-sale bar when it enacted the AIA. *See id.* at *5. The Supreme Court held that Congress did not. Rather, as the ALJ noted, the *Helsinn* Court concluded that "when Congress reenacted the same language in the AIA, it adopted the earlier judicial construction of that phrase." *Id.* (quoting *Helsinn*, 586 U.S. at 131). The ALJ found the Court's reasoning applied equally to the facts here and supported that the AIA did not overturn long-established judicial precedent as applied to the facts here. *Id.*

The ALJ considered Celanese's contrary arguments and found them unpersuasive. Celanese relied on the AIA's textual changes, primarily Section 102's substitution of "claimed invention" for the pre-AIA reference of "invention." *Id.* at *6. This change, Celanese argued, meant that the AIA on-sale bar could only be triggered by sales of the claimed process itself, not by sales of products made using the claimed process. *Id.* The ALJ found Celanese's position lacked merit. *Id.* Pre-AIA precedent, the ALJ explained, recognized the distinction between a process and a product of a claimed process. *Id.* That precedent established that "a product could embody commercialization of a method invention sufficiently to trigger the on-sale bar." *Id.* Following the reasoning in *Helsinn*, the ALJ concluded that the addition of the word "claimed" was insufficient to show the AIA overturned settled law as applied here. *Id.*

The ALJ also rejected Celanese's argument on the AIA's removal of pre-AIA Section 102(g) and the expansion of prior-user rights under Section 273. *Id.* at *6–7. The ALJ reasoned that these changes were driven by distinct policy rationales, and those sections addressed issues

unrelated to patentees' actions or the on-sale bar. *Id.* Lastly, the ALJ rejected Celanese's argument on legislative history. *Id.* at \*7–8. Evaluated in context, the ALJ reasoned, the passages cited by Celanese did not show that Congress "thr[ew] out the [existing] understanding of the on-sale bar . . . , even if a few senators wished it were otherwise." *Id.* at \*8.

The ALJ concluded that the AIA did not alter the pre-AIA rule that "a patentee's sale of an unpatented product made according to a secret method triggers the on-sale bar to patentability." *Id.* at \*9. Accordingly, the ALJ held that Celanese's claims at issue were invalid because Celanese sold Ace-K made using its secret process more than one year before it sought the asserted patents. *Id.* On that basis, the ALJ granted Jinhe's motion for a summary determination of no violation of 19 U.S.C. § 337.

Celanese petitioned for review of the ALJ's decision by the Commission, which the Commission denied. *See In the Matter of Certain High-Potency Sweeteners, Processes for Making Same, & Prod. Containing Same*, Inv. No. 337-TA-1264, 2022 WL 1043922, at \*1 (Apr. 1, 2022). The ALJ's decision thus became the final decision of the Commission.

Celanese appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(6).

## DISCUSSION

"Application of the on-sale bar under 35 U.S.C. § 102 is ultimately a question of law that we review de novo." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.* ("*Helsinn I*"), 855 F.3d 1356, 1363 (Fed. Cir. 2017), *aff'd*, 586 U.S. 123 (2019).

The question before this court is whether the AIA changed Section 102's on-sale bar such that Celanese's pre-2015 sales of Ace-K made using a secret process would not invalidate its later-sought claims on that process. Consistent with the Supreme Court's holding in *Helsinn,* we

agree with the Commission that the AIA did not effect such a change.

## I.

Congress first codified the on-sale bar in the Patent Act of 1836. *See* Patent Act of 1836, ch. 357, § 6, 5 Stat. 117, 119. Since then, every patent statute has retained the on-sale bar as a condition of patentability. *Helsinn*, 586 U.S. at 129; *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371–73 (Fed. Cir. 2016) (en banc) (reviewing historical development of the on-sale bar). Before the AIA, Section 102(b) of the predecessor statute barred one from patenting an invention that was "in public use or *on sale* in this country, more than one year prior to the date of the application for patent." 35 U.S.C. § 102(b) (2006) (emphasis added); *see also id.* § 102(b) (1952).

Interpreting the pre-AIA "on sale" provision, this court has long held that sales of products made using a secret process before the critical date would bar the patentability of that process. In *D.L. Auld*, a case we decided four decades ago, we addressed facts strikingly similar to what we have here. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983). *D.L. Auld* involved Auld's patent drawn to a method of making cast decorative emblems. *Id.* at 1145–46. More than one year before Auld applied for the patent, Auld used that method to make sample emblems and offered them for sale, while keeping the method secret. *Id.* at 1147. We found Auld's patent invalid. *Id.* We explained that the intent behind the on-sale bar is to preclude an inventor's attempt to profit from commercial exploitation of his invention for more than one year before seeking a patent. *Id.* (citing *Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516 (2nd Cir. 1946)). Because Auld offered for sale emblems made using its method and attempted to profit from such use before the critical date, Auld forfeited "any right to the grant of a valid patent on the method." *Id.* We have reiterated

the same holding in other decisions. *See, e.g., Medicines*, 827 F.3d at 1376; *In re Kollar*, 286 F.3d 1326, 1333 (Fed. Cir. 2002); *In re Caveney*, 761 F.2d 671, 675 (Fed. Cir. 1985); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983).

Our holding is consistent with Supreme Court precedent going back to the 1800s. In *Pennock*, a seminal decision from 1829, the Supreme Court addressed the situation where an inventor sold products made using a patented process while withholding details of his invention from the public. *Pennock v. Dialogue*, 27 U.S. 1, 19–24 (1829). The Court reasoned that allowing the inventor to expand his exclusive rights by patenting the same invention would "materially retard the progress of science and the useful arts[] and give a premium to those who should be least prompt to communicate their discoveries." *Id.* at 19. In *Metallizing*, a 1946 Second Circuit case addressing the on-sale bar, Judge Learned Hand aptly observed that an inventor "shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy, or legal monopoly." *Metallizing*, 153 F.2d at 520. More recently, in *Pfaff*, the Supreme Court reiterated the same. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 68 (1998) (quoting *Metallizing*, 153 F.2d at 520). As a "limiting provision" on patentability, the on-sale bar prevents one from extending a patent monopoly beyond the statutory term by commercially exploiting an invention *prior to* seeking a patent. *Id.* at 64, 67. An inventor's "voluntary act" of exploiting his invention through a commercial sale before the critical date constitutes "an abandonment of his right" to a patent. *Id.* at 64 (quoting *Pennock*, 27 U.S. at 24); *see also Helsinn*, 586 U.S. at 129 (first citing *Pfaff*, 153 F.2d at 64; and then citing *Pennock*, 27 U.S. at 19). The same rationale reverberates throughout the history of our patent statute, and it holds true today.

As shown above, under long-settled pre-AIA precedent, pre-critical date sales of products made using a secret

process would trigger the on-sale bar to patentability and render invalid later-sought patent claims on that process. Under that precedent, Celanese's prior sales of Ace-K made using its secret process, well before the critical date, would have triggered the on-sale bar and invalidated its later-sought patent claims on that process.

## II.

## A.

In 2011, Congress enacted the AIA, shifting the "first-to-invent" system to a "first-inventor-to-file" regime. Pub. L. No. 112–29, § 3, 125 Stat. 284, 285–94 (2011); *Madstad Eng'g, Inc. v. U.S. Pat. & Trademark Off.*, 756 F.3d 1366, 1368 (Fed. Cir. 2014). In enacting the AIA, Congress amended Section 102, the pertinent part of which now provides that one shall not be entitled to a patent if "the claimed invention was patented, described in a printed publication, or in public use, *on sale*, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1) (emphasis added).[2]

In *Helsinn,* both this court and the Supreme Court had the occasion to address the reenactment of the "on sale" bar in the AIA. *Helsinn* involved a patent claiming palonosetron at a particular dosage, which is used to treat chemotherapy-induced nausea and vomiting. *Helsinn I,* 855 F.3d at 1361. Before the critical date, Helsinn contracted to commercially supply the drug at the claimed dosage but

---

[2] Congress also retained the one-year grace period for certain disclosures made one year or less prior to applying for patent, which was previously codified in pre-AIA Section 102(b) and is now codified in AIA Section 102(b)(1). As discussed *infra*, it is undisputed here that Celanese's prior sales occurred before the critical date and as such, are outside of the one-year grace period. *See, e.g., ITC Decision* at *9.

asked its marketing partner to keep the dosage confidential. *Id.* at 1362, 1364. The contracted sale, under well-settled pre-AIA on-sale bar precedent, would invalidate the patent. *See id.* at 1367. Helsinn, however, contended that the AIA overturned pre-AIA law. *Id.* We rejected that contention.

The Supreme Court affirmed. The Court explained that Congress reenacted the "on sale" language "against the backdrop of a substantial body of law interpreting § 102's on-sale bar." *Helsinn*, 586 U.S. at 130. This "substantial body of law" encompasses the Federal Circuit's judicial interpretation of the term. *Id.* at 130–31. As the Court recognized, the Federal Circuit has long held that, to trigger the on-sale bar, a sale need not disclose the details of the invention to the public. *Id.* (first citing *Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1357 (Fed. Cir. 2001); and then citing *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998)); *see id.* at 131 (The Federal Circuit has "made explicit what was implicit in [Supreme Court] precedents."). In view of well-settled pre-AIA precedent, the Court "presume[d] that when Congress reenacted the same language in the AIA, it adopted the earlier judicial construction of that phrase." *Id.* The Court reviewed Helsinn's cited textual changes, statutory structure, and legislative history, and found they failed to show Congress intended to upset that substantial body of long-settled precedent. *See id.* at 132; *see also Helsinn I*, 855 F.3d at 1367–71.

The same reasoning guides our inquiry here. As discussed in the preceding section, under long-settled pre-AIA precedent, the on-sale bar applies when a patentee sells, before the critical date, products made using a secret process. We presume that when Congress reenacted the "on sale" language, Congress was aware of pre-AIA precedent and adopted the settled judicial interpretation of the term. *Helsinn*, 586 U.S. at 131. This presumption is appropriate where, as here, Congress reenacts statutory language that

has attained settled judicial interpretation at the time of reenactment. *Id.*; *see also Keene Corp. v. United States*, 508 U.S. 200, 212 (1993). In interpreting the reenacted language, we generally adhere to that settled judicial interpretation unless Congress showed an intention to alter it. *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185 (1994) (citations omitted); *Molzof v. United States*, 502 U.S. 301, 307 (1992) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). With this in mind, we next turn to whether, in reenacting the term "on sale," Congress intended to abrogate the settled construction of the term relevant here.

## B.

Celanese contends that, in enacting the AIA, Congress intended to alter the on-sale bar such that its pre-2015 sales of Ace-K would not invalidate its later-sought patent claims. To support its contention, Celanese points us to certain textual changes in Section 102, other AIA sections, and selected excerpts from the legislative history.

### i.

Celanese cites several textual changes in AIA Section 102(a) and argues that they indicate congressional intent to alter the on-sale bar. Celanese directs us to AIA Section 102(a)'s (1) use of the phrase "claimed invention," which replaces "invention" used in the pre-AIA version;[3] and (2) addition of the catchall phrase "otherwise available to the public." Appellant Br. 16, 20. Based on these textual changes, Celanese asserts, post-AIA, sales of a product made using a claimed process invention, without publicly

---

[3]    *Compare* 35 U.S.C. § 102 (2006) ("A person shall be entitled to a patent unless . . . (b) the invention was . . . on sale . . . ."), *with* AIA § 102(a) ("A person shall be entitled to a patent unless— (1) the *claimed* invention was . . . on sale . . . ." (emphasis added)).

disclosing the process, would no longer trigger the on-sale bar. *Id.* at 17, 20. So as a result, Celanese says, its prior sales of Ace-K cannot place its process invention "on sale" to trigger the on-sale bar and invalidate its later-sought patent claims on that process. We are not persuaded.

Starting with the addition of "claimed," Celanese contends that this added word means that the on-sale bar now requires the "claimed invention" *itself* be on sale. *Id.* at 17. There is no dispute that the "claimed invention" here is the *process* Celanese used to make Ace-K. The dispute is: what it means for a claimed process invention to be placed on sale to trigger the on-sale bar. Celanese argues, contrary to pre-AIA precedent, that sales of products made using a secret process cannot trigger the AIA's on-sale bar. *See id.* Celanese's argument would have us find a foundational change to the on-sale bar as a patentability condition for process inventions.

The addition of the word "claimed" does not support the foundational change Celanese would have us find. For Section 102's on-sale bar purposes, whether "invention" or "claimed invention" is used, the statutory language references the same "invention" that an applicant seeks to patent, and nothing else. Our caselaw has, in addressing the on-sale bar, interchangeably referred to the invention at issue as the "claimed" invention. *See, e.g.*, *Pfaff*, 525 U.S. at 68 (discussing sales of products containing elements of "the invention *claimed* in the [patent at issue]" (emphasis added)); *Medicines*, 827 F.3d at 1374 (discussing sales of products made using a "*claimed* processes or methods" (emphasis added)); *Kollar*, 286 F.3d at 1333 (discussing commercialization of a product made using a "*claimed* process" (emphasis added)); *Caveney*, 761 F.2d at 675 (discussing the effect of sales of a "*claimed* invention" on patentability (emphasis added)). Consistent with existing judicial construction, that Congress elected to use the "claimed invention" alternative reflects no more than a clerical refinement of terminology for the same meaning in substance.

Turning next to the added catchall phrase, "or otherwise available to the public," Celanese argues this phrase "confirms that the AIA's on-sale provision excludes sales of a product that do not disclose the inventive process." Appellant Br. 20. Celanese's proposition requires that under the AIA, the details of the claimed invention must be disclosed to the public for the on-sale bar to apply.

Helsinn posited Celanese's proposition, and the Supreme Court explicitly rejected it. *Helsinn*, 586 U.S. at 131. We conclude the same here. Section 102 enumerates several categories of "conditions for patentability," which include that the invention cannot be previously "patented," "described in a printed publication," or "on sale." The "on sale" category, as the Court explained, has never required that a qualifying commercial sale reveal to the public the details of the claimed invention. *Id.* at 125, 130. The catchall phrase, "or otherwise available to the public," "captures material that does not fit neatly into the statute's enumerated categories but is nevertheless meant to be covered." *Id.* at 132. The addition of this phrase, however, "is simply not enough of a change" to conclude "that Congress intended to alter the meaning of the reenacted term 'on sale.'" *Id.* at 131.

The rationale behind the on-sale bar further confirms our conclusion. Whatever the type of invention, the on-sale bar precludes one from commercially exploiting the invention *and* then continuing that exploitation through a patent, effectively extending the statutory patent term. *See, e.g.*, *Pfaff*, 525 U.S. at 68. Contractually, a commercial sale profiting from a patented product may vary in form from a sale involving a patented process. *See, e.g.*, *Kollar*, 286 F.3d at 1332. The Supreme Court's and this court's precedents have long recognized this distinction and further recognized the importance of this distinction relevant to the on-sale bar. *See, e.g.*, *Pennock*, 27 U.S. at 14 (addressing the on-sale bar as applied to the patented process of "making leather tubes or hose"); *Kollar*, 286 F.3d at 1332–33. As

relevant here, for patented processes, the on-sale bar applies when one commercially exploits the process by seeking compensation from the public for carrying out that process before the critical date. *See, e.g.*, *Medicines*, 827 F.3d at 1374; *see also BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020) (discussing the manners in which a process can be "sold" for on-sale bar purposes).

We discern no support for Celanese's proposition that Congress intended to alter the on-sale bar as applied to process inventions, or to disturb the underlying rationale in our caselaw.

ii.

Celanese next argues that certain other provisions of the AIA, including Sections 102(b), 271(g), and 273(a), indicate that Congress intended to alter the scope of the on-sale bar. We conclude that none of these provisions changes the meaning of the on-sale bar or speaks to the facts here. And they do not support Celanese's argument.

Celanese first points us to the grace-period provision in Section 102(b). Section 102(b)(1) provides a one-year grace period for "disclosures" made "by the inventor" within a year before he seeks a patent.[4] Celanese contends that if the on-sale bar continues to apply to the inventor's "secret commercialization," "[n]o grace period would exist for [Section] 102(a)(1) conduct by the inventor that *involves no disclosure*." Appellant Br. 25 (emphasis added). So according to Celanese, this would cause a "mismatch" between

---

[4]   35 U.S.C. § 102(b)(1), in pertinent part, provides that "[a] disclosure made [by the inventor] 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1)[.]"

14              CELANESE INTERNATIONAL CORPORATION v. ITC

Section 102(a)(1)'s on-sale provision and Section 102(b)(1)'s grace period. *Id.* at 23–25.

Section 102(b)(1) and its grace period do not alter our understanding of the on-sale bar under Section 102(a)(1) here. As Jinhe points out, Section 102(b)(1)'s grace-period provision is not implicated here because Celanese's prior sales at issue occurred well outside of the one-year grace-period window. Intervenor Br. 38. We need not, and decline the invitation to, construe term(s) in Section 102(b)(1). Ultimately, Celanese's argument rests on the proposition that a sale must disclose details of the claimed invention to the public before it triggers the on-sale bar. *See, e.g.*, Appellant Br. 24 (to trigger the on-sale bar under Section 102(a)(1), "the claimed invention must have been disclosed to someone"). As discussed *supra*, we reject that proposition.

Second, to support its contention that Congress altered the "on sale" provision in Section 102(a), Celanese points to Section 271(g) (infringement by third parties) and Section 273(a) (third-party infringement defense).[5] *Id.* at 19, 26. Regarding section 271(g), Celanese relies on the reference to "a product which is made by a process," a reference that does not appear in Section 102(a)'s on-sale provision. *Id.* at 19–20. This textual difference, Celanese asserts, is further indication that Congress meant for Section 102(a)'s

---

[5]    *See* 35 U.S.C. § 271(g) ("Whoever without authority imports into the United States or offers to sell . . . a product which is made by a process patented in the United States shall be liable as an infringer[.]"); *id.* § 273(a)(1) (providing a third-party prior-use defense against infringement if "[it], acting in good faith, commercially used the [patented] subject matter in the United States, either in connection with an internal commercial use or an actual arm's length sale or other arm's length commercial transfer of a useful end result of such commercial use").

on-sale bar to no longer encompass sales of products made using a secret process. *See id.* Celanese also contends that if Section 102(a)'s on-sale bar applies to sales of products made using a secret process, it would render Section 273(a)'s prior-use defense superfluous. *Id.* at 26–27. We find scant merit in Celanese's contentions.

Sections 271(g) and 273(a) both concern infringement and third-party actions, and we fail to see how they would govern the interpretation of Section 102(a)'s on-sale bar. The cited sections do not concern patentability, or what actions of *an inventor or applicant* may preclude him from *obtaining* a valid patent, as provided in Section 102. Instead, the cited sections address what actions by *a third party* may lead to the liability for *infringing* a valid patent.

Patentability (or validity) and infringement are distinct issues concerning different actors and actions, governed by different frameworks with different rationales. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015). As the Commission noted, "Section 273 provides an infringement defense to one using a method prior to the patenting of that method by another; the question of whether the same operative facts will invalidate the patent is entirely distinct." *ITC Decision*, 2022 WL 142328, at *7 (citing *BASF Corp.*, 955 F.3d at 968); *see W.L. Gore*, 721 F.2d at 1550 (distinguishing, relevant to the on-sale bar, the effect of the inventor's own commercialization and that by a third-party). The fact that Congress elected to write *infringement*-related sections in a certain way does not support a conclusion that Congress meant to rewrite sections on *patentability* or *validity*. Accordingly, we are not persuaded the cited sections show that Congress intended to alter Section 102's on-sale bar.

### iii.

Celanese also argues that the AIA's legislative history indicates that Congress intended to remove sales like

Celanese's prior sales here from the scope of the on-sale bar. We are not persuaded.

Celanese primarily relies on a colloquy between two senators, which was referenced in a footnote accompanying the background section of a committee report. *See* Appellant Br. 45–46 (citing H.R. Rep. No. 112-98, at 43 n.20 (2011)). In that colloquy, Senator Leahy stated his view that "subsection 102(a) was drafted in part to do away with precedent under current law that private offers for sale or private uses or secret processes practiced in the United States . . . may be deemed patent-defeating prior art." 157 Cong. Rec. S1496–97 (daily ed. Mar. 9, 2011) (cited at H.R. Rep. No. 112-98, at 43 n.20 (2011)). Celanese argues this statement shows that Congress altered pre-AIA law to require that triggering sales under Section 102(a) must disclose details of the invention to the public. *See* Appellant Br. 45–46. We disagree.

Individual *legislators'* views, isolated from the context of years of debate in the legislative process, do not meaningfully establish *congressional* intent. The Supreme Court has repeatedly cautioned against relying on legislative materials like committee reports, or individual legislators' views, to interpret statutory text. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[L]egislative history is itself often murky, ambiguous, and contradictory.").

Helsinn relied on the same colloquy to support the same proposition extended by Celanese, which both this court and the Supreme Court rejected. *See, e.g.*, *Helsinn I*, 855 F.3d at 1368–69. As we explained, the cited statements, viewed in context, at most concerned "public use" and failed to support "a foundational change in the theory of the statutory on-sale bar." *See id.* We reach the same conclusion here. And we reiterate the Supreme Court's holding that, to trigger the on-sale bar, a sale need not

"make the details of the invention available to the public." *Helsinn*, 586 U.S. at 125; *id.* at 131.

Accordingly, we hold that the enactment of the AIA did not constitute a foundational change in the theory of the statutory on-sale bar provision, 35 U.S.C. § 102(a)(1), in particular, to require that sales of products made using a secret process cannot trigger the on-sale bar. We conclude that Celanese fails to show the AIA overturned settled precedent that pre-critical date sales of products made using a secret process preclude the patentability of that process. Celanese's pre-2015 sales of Ace-K made using its secret process thus trigger the on-sale bar and preclude patentability of that process. Those sales thus render invalid Celanese's later-sought patent claims on that process.

## CONCLUSION

We have considered Celanese's remaining arguments and find them unpersuasive. For the reasons set forth above, we conclude that Celanese's claims at issue are invalid under the on-sale bar in AIA Section 102. Accordingly, the Commission's judgment is affirmed.

## **AFFIRMED**

### COSTS

Costs against Appellant.