# United States Court of Appeals
# for the Federal Circuit

———————————————

**DEFINITIVE HOLDINGS,**
*Plaintiff-Appellant*

**v.**

**POWERTEQ,**
*Defendant-Appellee*

———————————————

2024-1761

———————————————

Appeal from the United States District Court for the District of Utah in No. 2:18-cv-00844-DBB, Judge David Barlow.

———————————————

Decided: April 14, 2026

———————————————

CHARLES L. ROBERTS, Wasatch-IP, Salt Lake City, UT, argued for plaintiff-appellant.

JULIE S. GOLDEMBERG, Morgan, Lewis & Bockius LLP, Philadelphia, PA, argued for defendant-appellee. Also represented by NOLAN M. GOLDBERG, SHILOH RAINWATER, BALDASSARE VINTI, Proskauer Rose, New York, NY; TODD JOSEPH OHLMS, Chicago, IL; JOHN E. ROBERTS, Boston, MA.

———————————————

Before MOORE, *Chief Judge*, DYK and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Definitive Holdings, LLC ("Definitive") sued Powerteq LLC ("Powerteq") for infringement of patent claims relating to reprogramming engine controllers. The United States District Court for the District of Utah granted Powerteq's motion for summary judgment of invalidity under the pre-America Invents Act ("AIA") version of 35 U.S.C. § 102(b). *Definitive Holdings, LLC v. Powerteq LLC*, 731 F. Supp. 3d 1243, 1251–62 (D. Utah 2024) ("*Decision*"). Definitive appeals, contending that the district court erroneously relied on inadmissible hearsay and that the 35 U.S.C. § 102(b) on-sale bar should be limited to sales expressly disclosing the prior art device's functionality. We affirm.

## I. BACKGROUND

Definitive sued Powerteq in the District of Utah, alleging infringement of claims 1, 12, 21, 23, 27, 28, 31, and 32 of U.S. Patent No. 8,458,689 (the "'689 patent"). *Decision* at 1249–50. The '689 patent has a priority date of March 30, 2001.[1] It claims methods and apparatuses for "upgrading software in an engine controller," by connecting a device to an engine controller, where the device can replace portions of the stock engine control software with new data blocks while retaining an image of the stock engine control software. *See, e.g.*, '689 patent claims 1, 27.

---

[1]    "Sales made more than one year before the patent's priority date implicate the on-sale bar of 35 U.S.C. § 102(b)." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1340 (Fed. Cir. 2007). For the '689 patent, this "critical date," *id.*, is March 30, 2000.

Powerteq moved for summary judgment of invalidity under pre-AIA 35 U.S.C. §§ 101, 102(b), and 112, as well as for summary judgment of non-infringement. *Decision* at 1250–51 & n.22. With respect to 35 U.S.C. § 102(b), Powerteq argued that, by at least 1996, non-party Hypertech Inc. ("Hypertech") sold a device named the "Hypertech Power Programmer III" (the "PP3") that embodied all limitations of the asserted claims of the '689 patent. *See Decision* at 1252, 1257–58; J.A. 7038–39 (Ramsey Dep. 18:16 to 19:21). Definitive "d[id] not dispute any of Powerteq's alleged undisputed facts," but instead contended that "the facts upon which the motion [was] based" relied on "inadmissible evidence." J.A. 6657–58. Definitive specifically objected to the admissibility of: (1) the deposition testimony of Hypertech's 30(b)(6) witness, CEO and owner Mr. Ramsey, that "Hypertech was based in the United States and that it sold PP3 units in the United States beginning in 1994," *Decision* at 1253–54; and (2) the source code of the PP3, as well as an expert declaration from Dr. Brogioli relying on that source code, *Decision* at 1254–55.

Definitive argued that Mr. Ramsey's deposition testimony would be inadmissible at trial because it violated Federal Rule of Evidence 602's requirement that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Decision* at 1253 (quoting Fed. R. Evid. 602). The district court determined that Mr. Ramsey's deposition testimony was admissible at summary judgment notwithstanding any lack of personal knowledge, holding that Federal Rule of Civil Procedure 30(b)(6) permits corporate representatives to testify outside of their personal knowledge. *Decision* at 1253–54. Accordingly, the district court ruled that "it is immaterial that Mr. Ramsey joined Hypertech years after the company stopped selling the [PP3] or that no engineers who worked on the device still work for Hypertech today" and

considered Mr. Ramsey's deposition testimony in its summary judgment analysis. *Decision* at 1254; *see, e.g.*, *Decision* at 1257 ("Mr. Ramsey testified as to sales of the PP3 made in the United States between 1994 and 2001 . . . .").

Definitive further contended that the source code of the PP3 was inadmissible hearsay and that no exception applied. *Decision* at 1254. The district court determined that "code that merely describes computer commands" is not hearsay because "the code is not a statement," even though "descriptions within the code . . . would fall within the definition of hearsay." *Decision* at 1255. The district court further concluded that both "the code and the descriptions within the code" could be presented in an admissible form at trial because they were business records under Federal Rule of Evidence 803(6) and because "another employee at Hypertech who was charged with maintaining records" would be able to authenticate the source code. *Decision* at 1255. In deciding summary judgment, the district court thus considered the PP3's source code as well as Powerteq's expert's declaration analyzing the source code. *See, e.g.*, *Decision* at 1259 ("[D]r. Brogioli declared that the PP3 contained code that enabled it to save and restore the original software.").

Definitive also contended that the PP3 was not anticipatory prior art. *Decision* at 1255–62. Definitive argued that Hypertech abandoned its use of the PP3 and that the sale of the PP3 did not render the asserted claims of the '689 patent invalid because Powerteq offered no evidence that the PP3 disclosed all limitations of the asserted claims by disclosing the inner workings of the device to the public. *Decision* at 1255–57. The district court rejected these arguments, holding: (1) that "[n]otwithstanding abandonment of the prior use—which may preclude a challenge under section 102(g)— . . . third party prior use accessible

to the public is a section 102(b) bar,"[2] *Decision* at 1256 (first alteration in original) (quoting *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1333 (Fed. Cir. 2005)); and (2) that "disclosure is not required under the prior sale doctrine," *Decision* at 1257. Accordingly, the district court held that there was "no genuine dispute of material fact that the [PP3] was the subject of a commercial offer for sale more than one year before the critical date," *Decision* at 1257, and that there was no genuine dispute of material fact that the PP3 fully embodied each of the asserted claims, *see Decision* at 1258–62.

The district court granted Powerteq's motion for summary judgment of invalidity under 35 U.S.C. § 102(b) and did not reach Powerteq's other arguments. *Decision* at 1262. Definitive timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. STANDARD OF REVIEW

We review the grant of summary judgment under the law of the regional circuit, here, the Tenth Circuit. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). Under the law of the Tenth Circuit, "[w]e review a district court's decision granting summary judgment *de novo,* resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). At summary judgment, "the content or substance of the evidence must be admissible." *Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)). But evidence "need not be submitted 'in a form that would be admissible at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)). The Tenth

---

[2]    Definitive has not raised this issue of abandonment on appeal. *See generally* Appellant's Br.

Circuit "review[s] a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." *Id.*

## III. DISCUSSION

Definitive contends that the district court erred by: (1) relying on Mr. Ramsey's 30(b)(6) deposition testimony at the summary judgment stage, despite his purported lack of personal knowledge, Appellant's Br. 16–31; (2) relying on the PP3 source code, which it contends is inadmissible hearsay, Appellant's Br. 32–42; (3) failing to sufficiently address the heightened burden of clear and convincing evidence required to invalidate patent claims, Appellant's Br. 42–45; and (4) holding that 35 U.S.C. § 102(b) applies to third-party sales when the limitations of the asserted patent claims are not publicly disclosed, Appellant's Br. 45–58. We address each argument in turn.

### A.

We first address Definitive's arguments regarding Mr. Ramsey's deposition testimony. Definitive argues that the district court erred by considering Mr. Ramsey's 30(b)(6) deposition testimony at summary judgment because the substance of that testimony would not have been admissible at trial. Appellant's Br. 12–31. Definitive contends that the district court relied on Mr. Ramsey's 30(b)(6) deposition testimony for two key determinations: (1) that the PP3 "was on sale before the critical date of the '689 patent," and (2) "that it ran on the code that Powerteq's expert analyzed." Appellant's Br. 12. Definitive contends that Mr. Ramsey's testimony as to these determinations was inadmissible because it was not based on personal knowledge, violating Federal Rule of Evidence 602.[3]

---

[3] Definitive has not raised any argument that Mr. Ramsey's testimony would be inadmissible hearsay under Federal Rule of Evidence 802. *See* Appellant's

Appellant's Br. 16–31.   In particular, Definitive argues that the Tenth Circuit would adopt the rule that while Federal Rule of Civil Procedure 30(b)(6) permits corporate representatives to be deposed about matters outside of their personal knowledge, Federal Rule of Civil Procedure 32(a)(1)(B) prohibits the use of that testimony at summary judgment, because the testimony would be inadmissible at trial under Federal Rule of Evidence 602.   Appellant's Br. 17–29.

We do not resolve Definitive's argument that the Tenth Circuit would adopt that evidentiary rule because we hold that Mr. Ramsey's testimony within his personal knowledge adequately establishes (1) his ability to authenticate the PP3 sales records, which themselves demonstrate that the PP3 was on sale prior to the critical date of the '689 patent; and (2) that Powerteq's expert, Dr. Brogioli, analyzed source code from the PP3.   Because the portions of the testimony establishing these facts are the only

---

Br. 12–31 (characterizing the testimony as hearsay but citing only the personal knowledge requirement of Federal Rule of Evidence 602 in support of exclusion).   "[T]he rules governing hearsay and personal knowledge are distinct and address different evidentiary defects."   *United States v. Duran*, 941 F.3d 435, 448 (10th Cir. 2019).   A party must raise separate personal knowledge and hearsay objections to preserve both challenges.   *Id.*   To the extent that Definitive now raises a separate double hearsay objection, *see* Appellant's Br. 30–31, Definitive does not identify where that objection was properly preserved below, and Definitive does not contend that there was plain error.   J.A. 3487–90 (raising only a personal knowledge objection under Rule 602 in response to Powerteq's motion for summary judgment); *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019); *Bird v. West Valley City*, 832 F.3d 1188, 1194 n.1 (10th Cir. 2016).

portions of Mr. Ramsey's deposition testimony necessary for the disposition of the case, we do not need to decide whether other portions of Mr. Ramsey's deposition testimony should have been excluded from consideration or how the Tenth Circuit would approach[4] the use of Rule 30(b)(6) deposition testimony at summary judgment. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1278 (Fed. Cir. 2010) ("As an appellate court, we are not limited to a district court's stated reasons for invalidating claims and can affirm a grant of summary judgment on any ground supported by the record and adequately raised below."); Powerteq LLC's Motion for Summary Judgment at 30 n.12, *Definitive Holdings v. Powerteq*, No. 2:18-CV-00844-DBB-DBP, 2023 WL 9319765 (D. Utah Aug. 23, 2023), Dkt. No. 219 ("If the Court accepts Dr. Brogioli's declaration, the Hypertech Source Code, Mr. Ramsey's substantive testimony, or the Hypertech product manual (individually or together), then Powerteq would have sufficiently proven how the PP3 operates. Additionally, if the Court accepts [Mr.] Ramsey as a custodian and any Hypertech document, then there can be no question that the PP3 was on sale in the United States prior to the critical date and qualifies as prior art."); *Decision* at 1255.

"The foundational requirement for personal knowledge 'is not difficult to meet.'" *Duran*, 941 F.3d at 448 (quoting *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132

---

4    Powerteq contends that the Tenth Circuit has "squarely addressed the issue" by "reject[ing] the argument that 'second-hand' testimony from a Rule 30(b)(6) deponent impairs its credibility at summary judgment." Appellee's Br. 20 (quoting *Sidlo v. MillerCoors, LLC*, 718 F. App'x 718, 729 n.11 (10th Cir. 2018)). *Sidlo* is "not binding precedent," and given our disposition of the case we do not decide how much "persuasive value" the Tenth Circuit would give it. *Sidlo*, 718 F. App'x at 722 n.*.

(10th Cir. 2014)). "The district court considers only whether 'a rational juror could conclude based on a witness's testimony that he or she has personal knowledge of a fact.'" *Id.* (quoting *Gutierrez de Lopez*, 761 F.3d at 1132).

A rational juror could conclude based on Mr. Ramsey's testimony that he had personal knowledge of Hypertech's record-keeping practices. Mr. Ramsey testified that he had personally reviewed sales records indicating that the PP3 device had been sold prior to the critical date of the patent. J.A. 6700 at 11:7–24. He testified that he knew that these sales records were from a computer used in the 2000s and that he knew the function of the server. J.A. 6700–01 at 11:20–12:8.[5] He also testified as to his personal knowledge of Hypertech's record-keeping process, including how documents were marked by year and how the documents were organized. *See* J.A. 6700–01 at 11:14–12:20, J.A. 6704 at 15:1–12. "Evidence to prove personal knowledge may consist of the witness's own testimony," Fed. R. Evid. 602, and in the Tenth Circuit a witness who "personally examined" reports "ha[s] personal knowledge of their content." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005) (ruling audit reports were admissible despite the witness "not know[ing] how these audits were performed, who performed the audits, or the methodology used in conducting these audits"). A rational juror could determine from Mr. Ramsey's testimony that he had sufficient personal knowledge of Hypertech's record-keeping to authenticate the sales records of the PP3. And Definitive did not challenge the admissibility of the

---

[5] Certain portions of testimony were marked as confidential in the appendix but quoted without redaction in the public briefing. *See, e.g.*, Appellee's Br. 9–10 (quoting J.A. 7031–32 at 11:20–12:8; J.A. 6700–01 at 11:20–12:8). "Unredacted material included in nonconfidential or unsealed filings is presumed to be public." Fed. Cir. R. 25.1.

sales records in its opening brief and has thus forfeited any independent objection to those records. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020). Thus, the district court did not abuse its discretion by considering the sales records at the summary judgment stage.

Similarly, a rational juror could conclude based on Mr. Ramsey's testimony that he had personal knowledge that the PP3 was running the source code that Powerteq's expert relied upon prior to the critical date of the '689 patent. Mr. Ramsey testified that he and his colleagues found a PP3 device that was manufactured in 1996 and kept in its original package with an accompanying installation guide. J.A. 6742–44 at 53:23–55:20. Mr. Ramsey testified that "we took apart" the device that was manufactured prior to the critical date in explaining his personal knowledge of the device. J.A. 6742–43 at 53:13–54:5. Mr. Ramsey also explained that the device had serial and date codes, allowing him to determine that the PP3 was manufactured and sold prior to the critical date. J.A. 6743 at 54:6–8. He testified as to the particular version number discovered on this 1996 device and testified that he personally compared that version number to a revision list showing that software version was from 1996. J.A. 6742–43 at 53:13–54:5; J.A. 6709–10 at 20:17–21:19. He further testified that Hypertech's IT manager extracted the relevant source code from collected hard drives. J.A. 6707 at 18:3–12. The source code reviewed had the same version number as the device in the sealed package and was dated April 8, 1996. J.A. 5519. In the Tenth Circuit, Mr. Ramsey's testimony is sufficient for a rational juror to conclude that Mr. Ramsey had personal knowledge of the date of the source code Dr. Brogioli reviewed. *See Duran*, 941 F.3d at 448 n.9. A rational juror could conclude that Mr. Ramsey had personal knowledge that a PP3 device manufactured prior to the critical date was using the source code that Dr. Brogioli, Powerteq's expert, analyzed. Accordingly, the district court did not abuse its discretion by

considering Mr. Ramsey's testimony regarding the date and versioning of the source code in deciding summary judgment.

## B.

We turn now to Definitive's challenge to the source code itself. Powerteq and the district court relied on the expert testimony of Dr. Brogioli describing the source code to demonstrate that the PP3 embodied every limitation of the asserted claims of the '689 patent. *See Decision* at 1258–62. Definitive contends that source code is inadmissible hearsay, Appellant's Br. 32–35, and that the PP3 source code is not subject to a hearsay exception as a business record, Appellant's Br. 36–42. Because we conclude that the relevant portion of the source code was not hearsay, we do not reach whether any hearsay exception applies.

Hearsay is an out-of-court statement offered for "the truth of the matter asserted." Fed. R. Evid. 801(c). "An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth." *United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984). Thus, commands—like "dispose of a bag" or "burn a photo album"—are "instructions . . . not offered for their truth." *United States v. Rutland*, 705 F.3d 1238, 1252–53 (10th Cir. 2013). Instead, such instructions are offered to show that the commands "occurred rather than to prove the truth of something asserted." *Shepherd*, 739 F.2d at 514. So too for source code. While comments and descriptions[6] in source code may include statements that

---

[6]     Powerteq asserts that none of the code description text, only the "computer commands" themselves, were necessary to the district court's § 102(b) analysis. Appellee's Br. 34. Definitive does not dispute this assertion in its

could be offered for their truth, the actual source code commands themselves are not offered for their truth and thus are not hearsay.

Our decision in *Wi-Lan Inc. v. Sharp Electronics Corp.*, 992 F.3d 1366, 1371–74 (Fed. Cir. 2021), is not to the contrary. In *Wi-Lan*, we applied Third Circuit law in considering whether a paper printout of source code was a business record subject to a hearsay exception under Federal Rule of Evidence 803(6). *Id.* at 1373. We concluded that it was not, because there was "a lack of trustworthiness." *Id.* (quoting Fed. R. Evid. 803(6)(E)). We determined that the district court did not abuse its discretion in finding a lack of trustworthiness because the source code contained inconsistent dates; there was no evidence of code revisions; and manufacturers claimed they could not produce a particular version of source code before eventually producing it. *Id.* We specifically noted the presence of "added commentary on the printed excerpts." *Id.* at 1371 (quotation omitted). *Wi-Lan* does not suggest that authenticated source-code commands are hearsay; *Wi-Lan* merely explains whether unauthenticated printouts are

---

briefing. *See generally* Appellant's Reply Br. Accordingly, we do not address whether any descriptions in the source code were hearsay, whether they would be admissible under the business records exception, or whether an expert's reliance on any hearsay comments would be permissible. *See, e.g.*, *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1099 (10th Cir. 2019) ("When an appellee advances an alternative ground for upholding a ruling by the district judge, and the appellant does not respond in his reply brief . . . , he [does not] concede[ ] the correctness of the ruling . . . . But he waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee." (alterations in original) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)).

sufficiently reliable. *Id.* at 1371–74. No such concerns are present here, where the evidence at issue is Dr. Brogioli's testimony about source code instructions. Because we hold that source code commands are not hearsay, the district court did not abuse its discretion in considering expert testimony about source code commands in granting summary judgment.

### C.

Definitive contends that even if the sales records and the source code are admissible, summary judgment is inappropriate because there is insufficient evidence of sales of the PP3. *See* Appellant's Br. 31–32, 42–45. We disagree. Taken together and as authenticated by Mr. Ramsey, the sales records, installation guide, and the source code establish the necessary elements for summary judgment of invalidity.

The sales records, combined with Mr. Ramsey's testimony within his personal knowledge, establish that sales of the PP3 were made at least by 1996, well before the critical date of the '689 patent (March 30, 2000). *Cf. Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 430–31 (6th Cir. 2018) (holding that any hearsay statements in a 30(b)(6) deposition were admissible for summary judgment purposes because "the corporate designee's testimony on this point merely *confirmed* the evidence contained in the batch files" and "[a]bsent some suggestion to the contrary, it is reasonable to expect that [other] employees would provide materially the same testimony that the corporate designee summarized in her deposition"). The sales records indicate that Power Programmers were sold in the 1990s for certain car models. *See* J.A. 6223. The installation guide, found in a 1996 package, contains installation instructions for the PP3 for the same models. J.A. 4323–36. These documents, together with Mr. Ramsey's testimony authenticating these documents and describing his personal knowledge of the 1996 package, demonstrate that the PP3 (using the

source code that Dr. Brogioli analyzed) was sold to the public prior to the critical date of the '689 patent.

Definitive contends that the district court improperly considered the clear and convincing evidence standard. Appellant's Br. 42–45; *but see Decision* at 1251–52 (citing the presumption of validity and the clear and convincing evidence standard).    Definitive argues that because Mr. Ramsey indicated that he did not know the exact date that the relevant software version was implemented in the PP3, a reasonable jury could conclude that the software version was not implemented prior to the critical date of the '689 patent.    *See* Appellant's Br. 43–44.    However, Mr. Ramsey testified that the relevant software code version was completed on April 8, 1996, and that it would be implemented by approximately May 1, 1996, and thus before the critical date.    J.A. 6710–11 at 21:14–22:19. Mr. Ramsey explained how software would take several weeks of testing, and that the revision was implemented quickly based on the error it was designed to address.  *Id.* Moreover, Mr. Ramsey indicated that he examined a 1996 device with the relevant source code version implemented. J.A. 6742–43 at 53:23–54:12.  From this evidence, no reasonable jury could conclude that the source code was not implemented in the PP3 by March 30, 2000.

Mr. Ramsey's testimony, the dating of the source code, and the sales records provide evidence that the PP3 was sold prior to the critical date of the '689 patent. *See, e.g., Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1361–62 (Fed. Cir. 2025) ("It is true that public use requires actual use.  But circumstantial evidence is not second-class to direct evidence. . . . [E]ither direct or circumstantial evidence corroborating public use may be sufficient for a party to meet its burden of proof.") (citations and quotation marks omitted).  Definitive has provided no contrary evidence and did not dispute Powerteq's statement of undisputed material facts except to argue that it is based on inadmissible evidence. *Decision* at 1252.  Accordingly, the

district court did not err in concluding that there was no genuine dispute of material fact that the PP3 was sold prior to the critical date of the '689 patent.

The source code analyzed by Dr. Brogioli establishes that the PP3, as sold in 1996, embodies every limitation of the asserted claims of the '689 patent. The district court carefully walked through each asserted claim, explaining for each asserted claim how the PP3 fully embodies that claim. *See Decision* at 1258–62. Definitive has not disputed the presence of any claim limitation in the PP3. *See generally* Appellant's Br. Thus, the district court did not err in determining that the 1996 PP3 embodies every asserted claim of the '689 patent.

Definitive chose not to dispute the facts and instead relied on evidentiary challenges. *Decision* at 1252. Having lost those evidentiary challenges, it cannot now establish that a genuine dispute of material fact precludes summary judgment.

### D.

Lastly, Definitive argues that even if Hypertech sold the PP3 embodying the asserted claims of the '689 patent more than one year before the priority date of the '689 patent, summary judgment was inappropriate because the PP3 was not prior art. Appellant's Br. 45–58. Definitive contends that under pre-AIA 35 U.S.C. § 102(b), prior art must disclose to the public how to perform the patented method, and that the sale of the PP3 did not disclose how to perform the method of the '689 patent. Appellant's Br. 47–49.

However, triggering the on-sale bar does not "require that the sale make the details of the invention available to the public." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 125 (2019). An offer for sale may trigger the bar "without regard to whether the offer discloses each detail of the invention." *Id.* at 130 (citing *Pfaff v. Wells*

*Elecs., Inc.*, 525 U.S. 55, 67 (1998)).  "[T]he question is not whether the sale, even a third party sale, 'discloses' the invention at the time of sale, but whether the sale relates to a device that *embodies* the invention."  *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1583 (Fed. Cir. 1986); *see also Helsinn*, 586 U.S. at 131 ("The Federal Circuit . . . has long held that 'secret sales' can invalidate a patent.").  If so, then the patented invention is "on sale" under 35 U.S.C. § 102(b).[7]  *See generally Pfaff*, 525 U.S. at 67 ("[T]he on-sale bar applies when two conditions are satisfied before the critical date.  First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting.").

In *J.A. LaPorte*, we rejected a "broad proposition that the 'secret' commercialization of an invention by a third party creates no bar."  787 F.2d at 1582.  Instead, we distinguished cases where the on-sale bar was not triggered when "[a] process had been placed on sale by the third party's sale of a product made by [a] process . . . not discoverable from the product," rather than a "sale of the process *per se*."  *Id.* (discussing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1550 (Fed. Cir. 1983)).  Thus, the question in third-party secret sale cases is whether the third-party sale involves a product embodying the claimed features, or if the third-party sale is of a product that is manufactured using a claimed process or apparatus that was secret or otherwise not discoverable from the product.

---

[7]    The parties argued this case as both an on-sale bar and a public use case.  *See* Appellant's Br. 47–58; *Decision* at 1255 ("Powerteq argues that the Hypertech device is anticipatory prior art because it was on sale and in public use more than one year in advance of Definitive's patent application.").  Having decided that the on-sale bar applies, we need not consider public use.

The PP3 embodied the patented methods and apparatuses.  *See BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 970 (Fed. Cir. 2020) ("Where a product embodies essential features of the patented invention, a sale of the product is tantamount to a sale of the process performed by that product and thus creates an on-sale bar to the process claims as well." (cleaned up)).  The asserted claims cover a "method for upgrading software in an engine controller," '689 patent claim 1, and an "apparatus for upgrading software in an engine controller," '689 patent claim 27.  The installation guide to the PP3 explains how "an individual can reprogram a 1996 or newer vehicle sold in the United States" by using the sold apparatus.  J.A. 4326.  The PP3 was then sold to individual members of the public.  *See generally* Section III.C., *supra*.  This case is not a case where Hypertech had a secret manufacturing process that permitted it to make a product in a new way undiscoverable from the product itself.  *Cf. Gore*, 721 F.2d at 1550 (involving a new method to make tape, where only the tape itself was sold, and the tape was indistinguishable from other tape).  Instead, Hypertech was directly selling to the public the ability to perform the claimed method and to use the claimed apparatus.  In these circumstances, the public was directly making use of the patented features and permitting a patentee to remove them from the public domain would "withdraw[ ] from the public domain technology already available to the public."  *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed. Cir. 1984).  We reject Definitive's argument that the PP3 was not prior art under 35 U.S.C. § 102(b).  Accordingly, the district court did not err in determining that the asserted claims of the '689 patent are invalid.

## IV. CONCLUSION

We have considered Definitive's remaining arguments and find them unpersuasive. We affirm the district court's judgment of invalidity under pre-AIA 35 U.S.C. § 102(b).

**AFFIRMED**